UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:07-CV-148-H

TOBY KUBAS                                                                                      PLAINTIFF

V.

KLONDIKE MANOR, LLC d/b/a                                                           DEFENDANT
HARBORSIDE HEALTHCARE –
KLONDIKE MANOR REHABILITATION
AND NURSING CENTER

**MEMORANDUM OPINION AND ORDER**

Plaintiff Toby Kubas brought a common law personal injury claim against Defendant Klondike Manor, alleging that Defendant's negligence resulted in the injuries Plaintiff sustained in a fall on Defendant's premises. Defendant has moved for summary judgment on Plaintiff's claim, asserting that, among other things, Plaintiff's tort claim is barred by Ky. Rev. Stat. § 342.690(1), otherwise known in these circumstances as the "up-the-ladder" defense.[1] For the reasons that follow, the Court will sustain the motion.

I.

The facts of this case are relatively straightforward and do not appear to be in dispute. Defendant operates a skilled nursing facility in Louisville, Kentucky, which provides day-to-day medical and non-medical services, including wound care, to its long-term residents. Though

---

[1] Defendant also seeks summary judgment on the grounds that the waxed floor on which Plaintiff fell was an open and obvious hazard. Defendant's Motion for Summary Judgment at 2 n.4. Given that for the reasons discussed below Ky. Rev. Stat. § 342.690(1) bars Plaintiff's claim, the Court finds it unnecessary to consider Defendant's arguments on the open-and-obvious question.

Defendant currently provides wound care to its residents using its own employees, for a period ending sometime in 2006 and encompassing the date of Plaintiff's injury, Defendant contracted with a company called SharpCare to provide wound care to its residents.[2] Plaintiff, an employee of SharpCare, entered Defendant's facility on February 23, 2006 "for the purpose of providing wound care to a resident at the facility." Plaintiff's Response at 1. While on the premises, Plaintiff slipped and fell, allegedly due to the recent waxing of the floor. Plaintiff claims to have suffered significant injuries as a result of the fall, and she was paid over $7,000 in medical and indemnity benefits by State Farm Fire and Casualty Company, pursuant to SharpCare's insurance policy. During the relevant period, Defendant was insured by KESA, The Kentucky Workers' Compensation Fund. Plaintiff filed her tort action in state court in February of 2007, after which Defendant removed to federal court.

II.

The question presented here is one for the Court to decide as a matter of law. Ky. Rev. Stat. § 342.690 states, in pertinent part, that "[i]f an employer secures payment of compensation as required by this chapter, the liability of such employer under this chapter shall be *exclusive and in place of all other liability of such employer to the employee*...on account of such injury." Ky. Rev. Stat. § 342.690(1) (emphasis added). The statute provides that "employers" include "contractor[s] covered by subsection (2) of KRS 342.610." *Id.* Ky. Rev. Stat. § 342.610 makes "[e]very employer subject to this chapter...liable for compensation for injury...without regard to

---

[2]SharpCare describes itself as "a comprehensive wound care service that provides bedside wound assessment and treatment, surgical intervention, and staff education to long term care facilities." Defendant's Motion for Summary Judgment, Exhibit B.

2

fault as a cause of the injury." Ky. Rev. Stat. § 342.610(1).  In what has come to be known as "up-the-ladder" liability, the statute also makes "[a] contractor who subcontracts all or any part of a contract...liable for the payment of compensation to the employees of the subcontractor unless the subcontractor primarily liable for the payment of such compensation has secured the payment of compensation as provided for in this chapter."  Ky. Rev. Stat. § 342.610(2). Furthermore, "[a] person who contracts with another...[t]o have work performed of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession of such person shall for the purposes of this section be deemed a contractor, and such other person a subcontractor." *Id.*

The purpose of up-the-ladder workers' compensation liability is "to discourage a contractor from subcontracting work that is a regular or recurrent part of its business to an irresponsible subcontractor in an attempt to avoid the expense of workers' compensation benefits....not to shield owners or contractors from potential tort liability." *Gen. Elec. Co. v. Cain*, 236 S.W.3d 579, 585, 587 (Ky. 2007) (citing *Elkhorn-Hazard Coal Land Corp. v. Taylor*, 539 S.W.2d 101, 103–04 (Ky. 1976)).  However, "'the humane spirit of the statute does not warrant its extension beyond its legitimate scope.'" *Cain*, 236 S.W.3d at 587 (citing *Gateway Const. Co. v. Wallbaum*, 356 S.W.2d 247, 249 (Ky. 1962)).  Thus, "[i]f premises owners are 'contractors' as defined in [the statute], they are deemed to be the statutory, or 'up-the-ladder' employers of individuals who are injured while working on their premises and are liable for *workers' compensation* benefits....[but] are immune from *tort* liability...with respect to work-related injuries." *Cain*, 236 S.W.3d at 585 (emphasis added).  *See also, e.g., Murphy v. Louisville Gas & Elec. Co.*, 2007 WL 3231550, *1–2 (W.D. Ky. Oct. 30, 2007); *Franke v. Ford*

3

*Motor Co.*, 398 F. Supp. 2d 833, 837–39 (W.D. Ky. 2005); *Sharp v. Ford Motor Co.*, 66 F. Supp. 2d 867, 868–70 (W.D. Ky. 1998); *Fireman's Fund Ins. Co. v. Sherman & Fletcher*, 705 S.W.2d 459 (Ky. 1986).

A.

The parties do not dispute that Defendant contracted with SharpCare to have certain services performed, but disagree over whether the services SharpCare was to provide were "a regular or recurrent part of the work" performed by Defendant. The Kentucky Supreme Court recently defined such work as that which is "customary, usual, or normal to the particular business (including work assumed by contract or by law) or work that the business repeats with some degree of regularity, and it is of a kind that the business or similar businesses would normally perform or be expected to perform with employees." *Cain*, 236 S.W.3d at 588. The court cautioned that "[t]he test is relative, not absolute," and advised that factors relevant to making the determination include the contracting business's "nature, size, and scope as well as whether it is equipped with the skilled manpower and tools to handle the task the independent contractor is hired to perform." *Id.* (citing Arthur Larson and Lex K. Larson, *Larson's Workers' Compensation Law*, § 70.06[5]).

The wound care work performed by Plaintiff pursuant to SharpCare's contract with Defendant falls squarely within the definition of "regular or recurrent" aspects of operating a skilled nursing facility. Defendant's facility administrator confirms this in his affidavit, and also notes that since 2006 Defendant has been providing this service using its own employees. Indeed, Plaintiff makes no assertion that wound care was only provided on an emergency basis, nor does she imply as much when describing the events surrounding her injury. Furthermore, the

4

Admission Agreement provided to residents by Defendant refers to wound care in the list of "supplies and services offered by [the] skilled nursing facility that may be charged to the resident by the skilled nursing facility or an outside supplier." Additionally, the plain language of the contract between SharpCare and Defendant makes clear that the purpose of the agreement was to provide regular staffing for the facility's wound care needs.[3]

Nevertheless, Plaintiff considers a single factor mentioned in *Cain* to be dispositive here. She argues that by definition, because Defendant contracted with SharpCare for wound care services, Defendant was obviously not "equipped with the skilled manpower and tools to handle the task the independent contractor is hired to perform." This observation seems to miss the proverbial forest for the trees.

Plaintiff misuses *Cain* by arguing that it prohibits "up-the-ladder" liability even when all factors but one might indicate it would be appropriate. The Court does not read *Cain* to condone such an approach. Moreover, Defendant contracted with Plaintiff precisely *because* wound care was such a regular *and* recurrent aspect of Defendant's business. *Cf. Sharp*, 66 F. Supp. 2d at 869–70 (rejecting a similar argument and noting that "the fact that [the contractor] does not actually perform the function, but subcontracts it instead, makes no difference under Kentucky law"). Furthermore, even if Plaintiff's contention regarding the "skilled manpower" criterion were lent credence, the fact that Defendant currently provides wound care using its own employees is strong evidence that this "requirement" would be satisfied.

---

[3] In its agreement to "Provide Wound Care Services," SharpCare promised to "[p]rovide Nurse Practitioners with expertise in geriatric wound and skin care management to assist [Defendant] in the prevention and treatment of skin breakdown," to "[p]erform monthly wound rounds with the nursing facility staff," and to "[p]rovide bedside debridement of necrotic wounds when appropriate." Motion for Summary Judgment, Exhibit B.

In short, there seems to be no doubt that a "regular and recurrent" aspect of operating a skilled nursing facility is wound care; indeed, were it not so, it is difficult to imagine why Defendant would have found it necessary to contract with SharpCare to provide wound care at all. In light of the significant amount of evidence put forth by Defendant on the issue, the Court finds that Defendant qualifies as a "contractor" for the purposes of Ky. Rev. Stat. § 342.610(2).[4]

B.

The only remaining disagreement over the applicability of the "exclusive remedy" protection is whether Defendant "secure[d] payment of compensation as required by this chapter." Ky. Rev. Stat. § 342.690(1).

It is undisputed that Plaintiff received over $7,000 in compensation from SharpCare's insurer, but more importantly for purposes of Ky. Rev. Stat. § 342.690(1), Defendant had in place at the time of Plaintiff's accident a workers' compensation policy provided by KESA, the Kentucky Workers' Compensation Fund. Defendant's Reply, Exhibit A. The Court finds the proof of coverage provided by Defendant to be sufficient to satisfy this element of the statute. *Cain*, 236 S.W.3d at 605.

Consequently, as a "contractor" within the meaning of Ky. Rev. Stat. § 342.610(2)(b), and having "secured payment of compensation" in the form of a valid workers' compensation insurance policy of its own at the time of Plaintiff's accident, Defendant is entitled to the

---

[4]This conclusion is consistent with those this Court and others have reached in a number of cases considering this area of Kentucky law. *See, e.g.*, *Thompson v. The Budd Co.,* 199 F. 3d 799 (6th Cir. 1999); *Granus v. N. Am. Phillips Lighting Corp.*, 821 F.2d 1253 (6th Cir. 1987); *Murphy*, 2007 WL 3231550; *Franke*, 398 F. Supp. 2d 833; *Smothers v. Tractor Supply Co.*, 104 F. Supp. 2d 715 (W.D. Ky. 1998); *Sharp*, 66 F. Supp. 2d 867; *Fireman's Fund Ins. Co.*, 705 S.W.2d 459; *Daniels v. Louisville Gas & Elec. Co.*, 933 S.W.2d 821 (Ky. App. 1996).

"exclusiveness of liability" provided for by Ky. Rev. Stat. § 342.690(1), and Plaintiff's tort claim is barred.

Being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** that Defendant's motion for summary judgment is **SUSTAINED** and Plaintiff's complaint is **DISMISSED WITH PREJUDICE**. Defendant's Motion to Stay All Discovery Deadlines is **DENIED** as **MOOT**.

This is a final and appealable order.

Date: January 24, 2008

cc: Counsel of Record